(175 App. Div. 93)

### MARCH v. LEHIGH & WILKES-BARRE COAL CO.

(Supreme Court, Appellate Division, Second Department. June 16, 1916.)

1. NEW TRIAL ☞105—NEWLY DISCOVERED EVIDENCE—IMPEACHMENT OF WITNESS.

One year after trial, and after being denied a new trial on the ground that plaintiff had sworn falsely, defendant made a motion for new trial on the ground that plaintiff's corroborating witness had sworn falsely at the trial, supported by affidavit of the witness secured by agents of defendant after the first motion had been denied. *Held*, that the motion was properly denied; the evidence being for the purpose of impeachment only.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 183, 221–223, 229; Dec. Dig. ☞105.]

2. NEW TRIAL ☞119—GROUNDS—NEWLY DISCOVERED EVIDENCE—LACHES.

There being no proof that plaintiff's corroborating witness was suborned to testify on the trial, or that he had been influenced by either party, and no showing that fraud was practiced upon the court or defendant by plaintiff or his representatives, an affidavit of the witness that he testified falsely at the trial and voluntarily desires to right the wrong done defendant will not entitle defendant to a new trial on the ground of newly discovered evidence; defendant being guilty of laches.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 243; Dec. Dig. ☞119.]

Jenks, P. J., and Carr, J., dissenting.

Appeal from Special Term, Queens County.

Action by Simon March against the Lehigh & Wilkes-Barre Coal Company. Verdict for plaintiff. From an order denying a motion for new trial, defendant appeals. Order affirmed.

See, also, 156 N. Y. Supp. 1133.

The following is the opinion of Garretson, J., at Special Term:

After the trial of this action, upon which the plaintiff obtained a substantial verdict and a judgment as compensation for personal injuries, the defendant appealed from the judgment and an order denying a motion for a new trial made upon the minutes. Pending such appeal it made a motion for a new trial upon the ground of newly discovered evidence. The affidavits setting forth the alleged newly discovered evidence were directed mainly to sustain the defendant's contention that the plaintiff, who was a witness in his own behalf, swore falsely concerning matters material to the proof of his case. Plaintiff's corroborating witness was one Harry Lowe, the verity of whose testimony was not then questioned. The motion last referred to was denied, and the defendant appealed from the order entered thereon also. The judgment and order and the order denying the motion for a new trial upon the ground of newly discovered evidence were affirmed by the Appellate Division on December 22, 1915. 156 N. Y. Supp. 1133.

[1] The defendant again moves for a new trial on the ground of newly discovered evidence, alleging that the said corroborating witness has voluntarily recanted and seeks to right the wrong which he has done to the defendant, in that he testified falsely and perjuriously upon the trial in quite every material respect. One Edward Griffith, residing at Kingston, Pa., deposes hereon that he is the chief clerk and manager of the defendant company, and it is part of his duty to investigate all causes of accidents which occur in the mines of the defendant in that locality; that it thus became a part of his duty to investigate the facts connected with the accident to Simon March, the plaintiff, which he did; that immediately after he learned that the judgment and order denying defendant's motion for a new trial on the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ground of newly discovered evidence in the above action had been affirmed, he at once set out to locate Harry Lowe, who had testified for the plaintiff; that the reason that he tried to find said Harry Lowe was that he was confident that Lowe's testimony at the trial was false in the essential facts and he felt that the said Harry Lowe was not the kind of a fellow who would deliberately lie, and that by talking to him he might be able to persuade Lowe to make an affidavit as to the fact. The foregoing recitals are practically in the language used by Griffith in so much of his affidavit, changed only from the first to the third person. Thereupon he found Lowe and, as the affiant further says, "explained my business and persuaded said Harry Lowe to go with me to Philadelphia, where we could have a quiet place to talk over the case." On the journey to and at Philadelphia they talked over the case, and, to use the words of the affiant, "Lowe told me how the accident happened, practically as he has sworn to in the annexed affidavit." In "the annexed affidavit" Lowe generally and particularly says that his testimony given on the trial was false. Lowe avers that the affidavit is not the result of threats, coercion, or the promise or hope of reward; that he realizes that in testifying falsely he did wrong, and that he is now telling the truth as his free act, to undo, if possible, the wrong which he has done.

It would seem that, after having failed to secure a new trial by an attempt to discredit the plaintiff, the defendant's agents now seek to accomplish the same result by discrediting the plaintiff's corroborating witness. It is hardly conceivable that the defendant's representatives and agents, when they made the first motion on the ground that the plaintiff had sworn falsely, did not then question the truthfulness of the testimony of Lowe; yet Mr. Griffith, who was active in procuring affidavits to be used on the first motion for a new trial on the ground of newly discovered evidence, did not "set out to locate Harry Lowe" until "immediately after I learned that the judgment and order denying defendant's motion for a new trial on the ground of newly discovered evidence was affirmed." It is indeed a part of his affidavit: "The first time I heard that Harry Lowe had testified falsely and was willing to make an affidavit to that effect was on January 25, 1916." If the defendant's agents were confident that the plaintiff testified falsely a year ago, it is passing strange that Lowe was not then under suspicion also. Harry Lowe might then well have been the subject of inquiry and investigation; but, while he may or may not have been, it was not until January 25, 1916, that it was discovered that he was "willing to make an affidavit" that he testified falsely upon the trial. The foregoing considerations show laches on the part of the defendant in making this motion.

There is no claim, or even a suggestion, that the witness Lowe was suborned to testify on the trial. For aught that appears, he gave his evidence as voluntarily and uninfluenced as he is said to have made his affidavit submitted on this motion. I think the court is not required to decide whether Lowe told the truth on the trial or not. It is assumed that the jury believed that he did. When his affidavit was made he certainly was not truthful, and for that reason it cannot be properly accepted as evidence that the statements made by him upon the trial were false. People ex rel. Stemmler v. McGuire, 2 Hun, 269, at page 271; Sims v. Sims, 12 Hun, 231, at pages 235, 236. A new trial will not be granted simply to enable a party to discredit his adversary's witnesses; and this rule applies, whether the witness is to be discredited by his own confession or by the averments of others.

[2] There is no claim or showing of fraud practiced upon the court or upon the defendant by the plaintiff, his attorney, counsel, or agents, in the procurement of the witness Lowe to testify, or in the giving of his testimony on the trial. Nothing was paid or promised to him as a consideration or reward for so doing. Each party to the action has at times agreed to pay and has paid the witness' traveling expenses, board bill, and lost wages, as his or its agents have severally been in intercourse with him, either before, at, or since the trial. There is no proof of procurement by the plaintiff or by any one representing him that the witness should perjuriously promote the plaintiff's cause of action. Lowe himself says nothing more than that he did a wrong to the defendant by falsely testifying, and voluntarily desires to right the wrong, and this in duty and good conscience, when a year after the trial

he is sought out and interviewed by the defendant's agent, Mr. Griffiths. For aught that appears, this witness has not been influenced by money or promises of favor or reward at any time by either party to the action, or by a representative of either party.

I am of the opinion that the defendant has failed to show facts which entitle him under well-settled rules to have the judgment in the action set aside and a new trial granted upon the ground of newly discovered evidence. The case of Shanahan v. Feltman, 154 App. Div. 809, 139 N. Y. Supp. 409, cited by counsel for the defendant, differs widely on the facts from the case at bar and is not controlling.

The motion should be denied, with costs.

Argued before JENKS, P. J., and CARR, RICH, STAPLETON, and PUTNAM, JJ.

Robert Thorne, of New York City (Gomer H. Rees, of New York City, on the brief), for appellant.

William Rasquin, Jr., of New York City, for respondent.

PER CURIAM. Order affirmed, with costs, on the opinion of Mr. Justice Garretson at Special Term.

STAPLETON, RICH, and PUTNAM, JJ., concur. JENKS, P. J., and CARR, J., dissent, upon the authority of Shanahan v. Feltman, 154 App. Div. 809, 139 N. Y. Supp. 409.

---

### ABRAMSON v. RYALL et al.

(Supreme Court, Appellate Term, First Department.    June 28, 1916.)

1. EVIDENCE ☞162(2)—TESTIMONY AS TO ENTRIES IN COURT RECORDS—COMPETENCY.

Testimony as to the contents of court docket by witness who examined same *held* incompetent to show assignment of judgment by judgment creditor.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 537; Dec. Dig. ☞162(2).]

2. ATTORNEY AND CLIENT ☞26—LIABILITY OF ATTORNEY—TORTS OF CLIENT.

An attorney for a judgment creditor is not liable for the wrongful act of his client in accepting payment in settlement of a judgment lien after having assigned such lien.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 38, 39; Dec. Dig. ☞26.]

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Joseph G. Abramson against George Ryall and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Argued June term, 1916, before GUY, BIJUR, and PHILBIN, JJ.

George Ryall, of New York City, for appellants.

Joseph G. Abramson, of New York City, for respondent.

PHILBIN, J. The complaint sets forth that the plaintiff paid the defendants the sum of $40 for a release of certain real estate from

---